**Rick Klingbeil, OSB No. 933326**
**Rick Klingbeil, P.C.**
2300 SW First Avenue, Ste. 101
Portland, Oregon 97201
Phone: 503-473-8565
E-Mail Address:  rick@klingbeil-law.com
    Of Attorneys for Chad Samuel as
    *Guardian Ad Litem* for Tyler Samuel

# IN THE UNITED STATES COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **CHAD SAMUEL as** *Guardian Ad Litem* **for TYLER SAMUEL**, a minor, | Civil No. |
| Plaintiff, | |
| v. | **COMPLAINT (CIVIL RIGHTS)** |
| **SUSAN VAN LIEW**, individually and in her official capacity as Special Education Administrator for the Lincoln County School District; **STEVE BOYNTON**, individually and in his official capacity as Superintendent of the Lincoln County School District; **LINCOLN COUNTY SCHOOL DISTRICT**, a public school district within the state of Oregon; **LIZ MARTIN**, in her individual and official capacity as chairperson of the Board of | **JURY TRIAL DEMANDED** |

Page 1 - COMPLAINT (Civil Rights)
Page 1 - COMPLAINT (Civil Rights)

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

Directors for the Lincoln County School District; **KAREN BONDLEY**, in her individual and official capacity as vice chairperson of the Board of Directors for the Lincoln County School District; **RON BECK**, in his individual and official capacity as a member of the Board of Directors for the Lincoln County School District; **KELLEY ELLIS**, in her individual and official capacity as a member of the Board of Directors for the Lincoln County School District; **TERRI WOODD**, in her individual and official capacity as a member of the Board of Directors for the Lincoln County School District; **OREGON DEPARTMENT OF EDUCATION,** a public body; **ROB SAXTON**, Deputy Superintendent of Public Instruction in the State of Oregon; **CHARLES R. MARTINEZ, JR.,  SAMUEL HENRY, MIRANDA SUMMER,  JEROME COLONNA, ANGELA BOWEN, ANTHONY VELIZ,** in their individual and official capacities as a board members of the Oregon Department of Education,

**JURY TRIAL DEMANDED**

Defendants.

Plaintiff through his attorney files this Complaint, and alleges as follows:

<u>**INTRODUCTION**</u>

**1.**

<u>Tyler Samuel</u>

Chad and Allison Samuel are the parents and guardians of Tyler Samuel ("Tyler").  Chad Samuel will seek appointment to serve as Tyler's *guardian ad litem* in relation to and concurrent with the filing of this legal claim.

Page 2 - COMPLAINT (Civil Rights)
Page 2 - COMPLAINT (Civil Rights)

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

**2.**

Tyler is a student in the Lincoln County School District.  He currently attends
Olalla Center for Children, a day treatment facility in Toledo, Oregon. Tyler has been
diagnosed with ADHD, Tourette's Syndrome, Major Depressive Disorder, Generalized
Anxiety Disorder, and Autism Spectrum Disorder.  The Lincoln County School District,
through its employees and agents, including defendant Susan Van Liew, has
repeatedly and without justification, and as a result of disability discrimination
intentionally refused to find Tyler eligible for special education services, or to provide
such services even though his parents have made repeated requests, and in spite of
the LCSD's legal obligation to do so. Defendants' have been motivated in significant
part Further, defendants have affirmatively attempted on at least one occasion to
prevent other school districts outside of LCSD from finding Tyler eligible for special
education services.

**3.**

Oregon Department of Education

The Oregon Department of Education ("ODOE") is responsible for
implementation of state policies with respect to public education at the kindergarten
through community college level, including academic standards and testing,
credentials, and other matters not reserved to the local districts and boards.  The
ODOE is overseen by the state Board of Education acting through the Governor of
Oregon, who is the Superintendent of Public Instruction. The Governor has appointed a
Deputy Superintendent to act as chief administrator of the ODOE who carries out the

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

state policies set by the board and by the Oregon State Legislature.

**4.**

The ODOE serves 199 elementary and secondary school districts and 20

education service districts, which serve over 500,000 students. The ODOE also assists

local districts and boards with statutory and regulatory compliance. The board sets

educational policies and standards for Oregon's public school districts, community

college districts, and educational service districts.

**5.**

Rob Saxton was and is Deputy Superintendent of Public Instruction in the State

of Oregon.  As such, he was involved in oversight, management, policy enforcement,

and policymaking for public education facilities throughout the state of Oregon,

including the Lincoln County School District.

**6.**

Charles R. Martinez, Jr., Samuel Henry, Miranda Summer, Jerome Colonna,

Angela Bowen, Anthony Veliz were board members of the Oregon Department

Education.  As such, they were involved in oversight, management, policy

enforcement, and policymaking for public education facilities throughout the state of

Oregon, including the Lincoln County School District.

**7.**

Lincoln County School District

The Lincoln County School District ("LCSD" or "District") is a municipal

corporation that operates public schools in Lincoln County, Oregon. LCSD includes the

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

communities of Yachats, Waldport, Eddyville, Newport, Siletz, Lincoln City and Toledo. The LCSD spans roughly 55 miles of the central Oregon Coast from Cascade Head south to Cape Perpetua.

### 8.

The LCSD includes Crestview Heights School (Waldport) (K-8); Taft Elementary School (Lincoln City) (K-6); Oceanlake Elementary School (Lincoln City) (K-6); Sam Case Elementary (Newport) (K-3); Newport Intermediate School (Newport) (4-6), and Toledo Elementary School (Toledo) (K-6).

### 9.

At all material times, Susan Van Liew ("Van Liew") was the Special Education Administrator for the Lincoln County School District.  Van Liew was involved in oversight, management, policy enforcement, and policymaking for special education within the Lincoln County School District. As such, she was directly involved in the policies, decision-making processes, and conduct related to Tyler Samuel as described herein.

### 10.

Steve Boynton is and was Superintendent of the Lincoln County School District and involved in oversight, management, policy enforcement, and policymaking for the District.

### 11.

Liz Martin, Karen Bondley, Ron Beck, Kelley Ellis, and Terri Woodd were members of the Board of Directors of the Lincoln County School District and were

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

involved in oversight, management, policy enforcement, and policymaking for the District.

**12.**

At all material times, the ODOE, LCSD, and their administrators, directors, and agents were directly responsible for providing Tyler Samuel with a Free and Appropriate Pubic Education ("FAPE"), and free of unlawful discrimination based on his disabilities.

**13.**

Summary of legal claims at issue

This lawsuit alleges violations of the Individuals with Disabilities Education Act, 20 U.S.C. §1400 *et seq.* ("IDEA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504"); the Americans with Disabilities Act, 42 U.S.C. §12131; 42 U.S.C. §1983; Due Process and Equal Protection Clauses of the Fourteenth Amended to the Constitution of the United States; and various claims based on violation of Oregon laws and the Oregon constitution.

**14.**

**JURISDICTION, VENUE AND INTRA DISTRICT ASSIGNMENT**

Jurisdiction for federal claims in this action is proper under 28 U.S.C. §§1331, 1337, 1343(3) and (4), and 42 U.S.C. §§1983 and 1988.

**15.**

Jurisdiction for supplemental state claims is proper under 28 U.S.C. §1367.

**16.**

Page 6 - COMPLAINT (Civil Rights)
Page 6 - COMPLAINT (Civil Rights)

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

The majority of the operative facts arose in Lincoln County, Oregon. A substantial amount of facts arose and witnesses are present in Portland, Oregon. Venue is therefore appropriate in the United States District Court for the District of Oregon, Portland Division.

## RELEVANT FACTS AND CONDUCT

### 17.

The facts below are presented as a representative summary of some of the wrongful conduct of Defendants in this matter.  Plaintiff will present additional facts and unlawful conduct by Defendants during discovery in this case, and based on discovery of additional facts and witnesses.

### 18.

The acts and omissions below constitute an ongoing course of conduct by defendants with respect to plaintiff.

### 19.

Tyler's LCSD experience in kindergarten and first grade

Tyler enrolled in Oceanlake elementary for the school year 2008 - 2009 for kindergarten, and first grade for the school year 2009 - 2010.  Tyler struggled with classroom rules and social norms in the beginning of Kindergarten, despite attending a very structured and accredited preschool since the age of one and one half years old.

### 20.

In first grade, Tyler was increasingly getting in trouble with staff and other students, and required an inordinate amount of attention and support from the teacher

Page 7 - COMPLAINT (Civil Rights)

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

and classroom aides.  On numerous occasions Tyler's first grade teacher reached out

to Tyler's parents to express her concern for Tyler's social and emotional health.

Tyler's teacher and parents devised several strategies and interventions to try to help

Tyler be more successful.

**21.**

On February 23, 2010 Tyler's first grade teacher Megan Crosbie wrote:

*"I am very concerned about Tyler.  Every day he continues to be very sad, quiet, and clingy.  He is not the same Tyler from the beginning of the year.  He never wants to leave me to go to lunch or specials or groups.  He cries all the time.  I was wondering if you had taken him to that child psychologist like you had mentioned...I don't mean to pry. I am just very worried about Tyler."*

**22.**

Tyler continued to struggle socially and emotionally at Oceanlake, and by the

end of the school year Tyler's parents decided a private school setting might be a

better fit for Tyler's needs for second grade.

**23.**

Second Grade

Tyler was enrolled in the Seventh Day Adventist School in the District for the

school year 2010 - 2011.  Tyler's parents began to request IDEA eligibility in April 2011,

during his second grade year.  His mother, Allison Samuel explained in her written

request for an initial IEP assessment t hat Tyler had been diagnosed with ADHD and

Obsessive Compulsive Disorder, and that she suspected Tyler might also have a

diagnosis of Autism Spectrum Disorder. In addition to her written request for an

evaluation Ms. Samuel provided the District with medical statements from Tyler's

Page 8 - COMPLAINT (Civil Rights)

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

Primary Care Physician and Psychiatrist that indicated that Tyler had been diagnosed with ADHD and OCD.

### 24.

In June 2011, the District conducted an Autism evaluation and a speech language evaluation. The eligibility team met on June 8, 2011 and found Tyler did not meet the eligibility criteria for the category of Autism. The District did not consider eligibility in other categories such as Other Health Impairment or Emotional Disturbance despite documentation verifying that he had medical diagnoses of ADHD and OCD.

### 25.

At that time, Tyler's second grade teacher stated:

*"Socially, Tyler struggles with interacting with other students. He insists on having his own way. When he doesn't get his way, he throws tantrums and cries. His reactions are above and beyond a typical reaction for other students his age. He can verbalize what the solution to a problem is but then gets stuck on a situation that occurred much earlier. He constantly interrupts his teacher during lessons, even though he visibly tries not to."*

### 26.

Tyler's parents also expressed concerns to LCSD about Tyler's aggression in the home setting and his inability to understand social situations.

### 27.

Third and Fourth Grade

Tyler enrolled in the Seventh Day Adventist School in the District for the school year 2011 - 2012 for third grade. Although Tyler had struggled with behavior at the SDA school, his parents believed that without an IEP in place, Tyler would struggle

Page 9 - COMPLAINT (Civil Rights)
Page 9 - COMPLAINT (Civil Rights)

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

more profoundly if placed at Oceanlake Elementary without supports.  They re-enrolled

him in SDA for his third grade year.

### 28.

Tyler continued to struggle with similar behavior issues to those listed above

through third grade, but his mental health and ability to cope deteriorated significantly

in the Spring of 2012.  At that time, he was admitted to Children's Farm Home sub-

acute program from 2/13/12 - 3/23/12, and again from 5/7/12 - 6/18/12.

### 29.

Tyler's behavior did not stabilize during his time at Children's Farm Home, so in

June 2012 he was moved to the Secure Children's Inpatient Program (SCIP) in

Portland, located at the Parry Center.  He remained in SCIP until November 2, 2012.

He was released from SCIP to the Olalla Day treatment program located in the District.

### 30.

As a result, LCSD was the district responsible for identifying him as a child with

a disability while he attended Olalla.  In each of the above noted placements, Tyler had

treatment goals around learning coping strategies to reduce anxiety, learning positive

social skills, and learning how to 'stop and think.'  The specific instruction around

achieving those and other goals was provided in both the treatment and the

educational portions of those programs. Tyler experienced a long period of emotional

stability and some academic success while enrolled in The Olalla Center.

### 31.

Special education administrator Van Liew communicated with Tyler's parents in

Page 10 - COMPLAINT (Civil Rights)

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

a 3/6/2013 email in response to parent's request for IDEA eligibility.  Van Liew wrote:

> " *While understanding your desire to have your son placed on an IEP, there is still a process that needs to be followed.*
>
> *We need to look at the need for accommodations or specially designed instruction within the context of his present setting.  I understand that things were done in the past, although the concerns at that point reflected a particular setting that is not the current setting. Part of the law in regard to special education and 504 has to do with the current setting and current needs. It is also part of special education law that least restrictive is what is tried first.*
>
> *We need to meet as a team to discuss what next steps will be.  It is what would have needed to occur at Oceanlake also had he enrolled there this Fall.*"

**32.**

An SST meeting followed this March 6, 2013 email correspondence.  During that meeting, Van Liew again refused to assess Tyler, and insisted on only providing him with a "504 behavior plan."  Van Liew's indicated that SST meetings should also be conducted if Tyler were admitted to Oceanlake Elementary.

**33.**

Tyler was admitted to Oceanlake Elementary in November 2013. Tyler's parents requested an SST meeting in writing on November 20, 2013 to Oceanlake Principal Rilke Klingsporn to discuss Tyler's academics and behavior.  Ms. Klingsporn refused to conduct an SST meeting in a written reply to parents' request. Ms. Klingsporn wrote on December 2, 2013:

> *"For right now, we need to have some time with him in class regularly so we can get a good feel for where is at academically. Once he's been here a bit and we start to collect some data, then we can see if there are any concerns that we might need to explore further."*

**34.**

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

Fifth grade

Tyler enrolled in Olalla Center for Children for the school year 2013 - 2014.  By September 2013, Tyler's parents were no longer able to afford paying for his treatment at Olalla, and parents insurance would no longer cover these services.  LCSD made no effort to fund his education at Olalla despite parents expressing their grave concern about Tyler entering a general educational environment without an IEP.

**35.**

LCSD's response to Tyler's parents' concern was to review Tyler's 504 behavior plan in an October 2013 SST meeting.  At that time, Tyler's parents were told by Van Liew that the District needed to attempt education in a general education setting and demonstrate that that would not be successful before discussing his need for an IEP.  Van Liew stated "we don't do proactive IEP's" when Tyler's parents insisted Tyler get an IEP before being put into the general education population.

**36.**

Tyler was moved to his home school at Oceanlake elementary in Lincoln City in November 2013 with no consideration of IEP assessments.  At Oceanlake, Tyler's behavior quickly deteriorated and escalated in severity, both at home and at school.

**37.**

In December 2013, Tyler's parents requested an SST meeting to discuss Tyler's needs for an IEP, and a meeting was held in January 2014.  Before the meeting, but after the request, Tyler was sent home for multiple profound anxiety attacks in school, violent outbursts in school, and bouts of crying and self-loathing.  Tyler also ran away

Page 12 - COMPLAINT (Civil Rights)

RICK KLINGBEIL, PC
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

from the school campus several times, and attempted to run more than a dozen times.

**38.**

On one occasion LCSD "lost" Tyler, and he was found by police almost an hour later, about half of a mile from school grounds.  Tyler's unsafe and erratic behavior was cause for multiple code yellow school lockdowns. He required police intervention no less than four times. Tyler was also sent home for feigning illness multiple times despite warnings that this was a condition of his disabilities.

**39.**

On February 5, 2014, Tyler's attorney at the time Chris Shank contacted Van Liew about a police response for Tyler's conduct during an anxiety attack. Van Liew wrote:

> *"It is true the police were called yesterday, there was a safety issue that needed a response.  The police did no intervention."*

> *"In the mean time, we have a good plan in place and are working toward appropriately responding to him in times of extreme anxiety."*

**40.**

On February 20, 2014 Ms. Shank notified the Oregon Superintendent of Public Education of her grave concerns for Tyler's lack of an appropriate education, and accurately predicted Tyler's further deterioration lacking and IEP and appropriate school services.  In that report, Ms. Shank stated:

> *"I have grave concerns about the amount of time Tyler has been without the instruction that he requires to benefit from his education.  Further delay in the provision of this needed instruction has potential implications for Tyler's education, his safety and the safety of staff who work with him."*

Page 13 - COMPLAINT (Civil Rights)

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

**41.**

Van Liew was aware of LCSD's choice to summon police force to subdue and contain Tyler, and she acknowledged that this need was due to anxiety, a condition for which Tyler likely would have qualified for an IEP.

**42.**

By April 17, 2014, Tyler deteriorated to the point of being admitted to The Parry Center for Children in Portland, Oregon, a residential mental health facility.

**43.**

The District failed to identify and evaluate Tyler under its Child Find obligation. The overall purpose of the IDEA is to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs. In order to accomplish this purpose, the District had an affirmative duty to identify, locate and evaluate all resident children with disabilities, regardless of the severity of the disability, who are in need of special education services. *El Paso v. RR*, 567 F.Supp. 2d 1918.

**44.**

This duty is comprehensive - it applies to children with disabilities who are enrolled by their parents in private, including religious, elementary schools and secondary schools located in the school served by the District and it applies to children who are "suspected of being a child with a disability…and in need of special education, even though they are advancing from grade to grade." 34 C.F.R.

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

§300.111(c)(1).

### 45.

The threshold for whether the child is suspected of being a child with a disability is relatively low and the focus of the inquiry by the District should not be whether the student actually qualifies for services, but whether the student should be referred for an evaluation. *Dept. of Ed., State of Hawaii v. Cari Rae S*., 158 F.Supp 2d 1190 (Hawaii, 2001).

### 46.

LCSD knew or had reason to know Tyler suffered from a substantial disability since his first grade year's struggles in 2009 - 2010. The District has had notice of Tyler's ADHD and OCD disabilities since April 2011 when parents provided the District with two medical referrals for assessment. Tyler had been a student in the LCSD for all but seven months - from 2/2012 through 11/2012 - of the past six school years. LCSD was provided Tyler's medical records with the addition of Generalized Anxiety diagnosis in November 2012 when he returned to the District from the Parry Center.

### 47.

Although the District conducted an assessment to determine if Tyler was eligible under Autism Spectrum Disorder in June 2011, it did not consider any other disability categories for which he might be eligible at that time or at any time since then, even though they had notice that he was a student with multiple other potentially qualifying disabilities.

### 48.

Page 15 - COMPLAINT (Civil Rights)
Page 15 - COMPLAINT (Civil Rights)

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

The District had an obligation to identify and evaluate Tyler as a student with a disability who needs special education and they have failed to meet this obligation.

**49.**

The District failed to conduct evaluations when requested by Tyler's parents. The Samuels requested an initial evaluation for Tyler's ADHD and OCD six times. Despite these repeated requests, no evaluation was initiated until March 2014.  In the February 2014 SST meeting, Ms. Van Liew and LCSD Legal counsel, Mr. Cohn-Lee admitted that LCSD had failed to assess Tyler after his parents' multiple prior written and verbal requests within the required 60 days.

**50.**

On five occasions the District failed to provide Tyler's parents with prior written notice of its refusal to conduct an evaluation that was requested by the parents. These violations occurred in SST meetings, student intake meetings when returning to LCSD from a mental health residential facility, and during email correspondence, including:

- November 2012 meeting for re-admittance to the LCSD from the Parry Center.

- Email request for IEP assessment March 2013,

- SST meeting March 2013,

- SST meeting October 2013,

- SST meeting  on January 2014.

**51.**

Page 16 - COMPLAINT (Civil Rights)
Page 16 - COMPLAINT (Civil Rights)

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

This failure to evaluate resulted in a failure to provide specially designed instruction and thus, a denial of FAPE for Tyler and intentional and unlawful discrimination based on Tyler's disabilities.

**52.**

The District's obligation to respond to parental consent for evaluation was further supported by a Federal Memorandum to State Directors of Special Education, (OSEP 2011). It states that while ED supports Response to Intervention initiatives and programs, "the use of RTI strategies cannot be used to delay or deny the provision of a full and individual evaluation to a child suspected of having a disability."

**53.**

In the February 2014 SST meeting, Tyler's parents detailed the ample evidence of his behaviors over the preceding four months in Oceanlake, Tyler's extensive medical record, and the nature of his diagnoses, all of which were shared with the District throughout Tyler's education.

**54.**

LCSD had Tyler in their District for 17 concurrent months at that point, with current Release of Information forms for all of Tyler's mental health treatment providers.  Despite the open access to this useful and compelling mental health and educational data, Tyler's parents' fastidious advocacy, and stated concerns of LCSD's own educators that had direct contact with Tyler, LCSD refused to consider his eligibility for special education based on Other Health Impairment.

**55.**

Page 17 - COMPLAINT (Civil Rights)
Page 17 - COMPLAINT (Civil Rights)

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

Tyler's parents specifically requested that the District consider eligibility during this meeting because a current Medical Statement was provided by parents and data had been collected that Tyler was unable to progress in the general education curriculum without specially designed instruction. In spite of this, during that February 2014 SST meeting Van Liew falsely stated that the District did not have enough information to determine eligibility at that time.

**56.**

Tyler experienced a major mental health relapse beginning in January 2014 as a result of being forced in to an inappropriate general educational setting, and not provided an IEP.  He became physically aggressive, and started to attack people. He also became suicidal and attempted to kill himself twice at home.

**57.**

Before and during Tyler's assessment period in March and April 2014, Tyler had expressed to Oceanlake staff verbally or in writing his desire to kill himself multiple times, and Tyler had been counseled by the LCSD school psychiatrist for this on at least three occasions.

**58.**

The well-documented physical attacks on LCSD staff, and violent outbursts that occurred on the Oceanlake campus involved multiple staff and police, and caused at least six campus-wide code yellows, causing hundreds of other student's educations to be compromised on multiple occasions.  Through this all, in the three years since his initial autism evaluation, LCSD has never conceded Tyler may have qualified for an IEP

Page 18 - COMPLAINT (Civil Rights)
Page 18 - COMPLAINT (Civil Rights)

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

in any area, and never responded to Tyler's parents repeated requests to have him evaluated for eligibility for special education.

**59.**

These failures resulted in a denial of a free and appropriate public education, and was intentional and unlawful discrimination based on disability.

**60.**

The District failed to assess Tyler for eligibility under the categories of Other Health Impairment or Emotional Disturbance despite his parents' presenting the District with a medical statement in April 2011 from their physician and Tyler's Psychiatrist with the diagnoses of Obsessive Compulsive Disorder (OCD) or Attention Deficit Hyperactive Disorder (ADHD).

**61.**

34 C.F.R. §300.304(c)(4) specifies that the District must ensure that the child is assessed in all areas related to the suspected disability.  In addition, 34 C.F.R. §300.304(c)(6) provides that, "In evaluating each child with a disability under §§300.304 through 300.306, the evaluation is sufficiently comprehensive to identify all of the child's special education and related services needs."

**62.**

In the parents' referral for evaluation provided to LCSD in April 2011, an excerpt from Tyler's second grade teacher conveyed there was reason to believe that Tyler had a social and emotional disability.  In that referral, the teacher Ms. McLeod wrote,

> "*Socially, Tyler struggles with interacting with other students.  He insists on having his own way.  When he doesn't get his way, he throws tantrums and*

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

*cries. His reactions are above and beyond a typical reaction for other students his age. He can verbalize what the solution to a problem is but then gets stuck on a situation that occurred much earlier. He constantly interrupts his teacher during lessons, even though he visibly tries not to."*

**63.**

LCSD failed to conduct assessments in all areas related to the referred or suspected disabilities including social and emotional status in the May - June 2011 assessments. The District narrowly and inappropriately focused assessment efforts on Autism Spectrum disorder alone.

**64.**

LCSD remained obligated to assess Tyler for these additional two referred disabilities (OCD and ADHD), and to identify all of his special education and related services needs. Even so, at no time did LCSD assess or provide prior written notice of its refusal to assess these additional areas.

**65.**

The District was on notice of those diagnoses and remained obligated to complete the evaluations throughout the period discussed in this Complaint.

**66.**

LCSD's own school records show the medical referrals for these disabilities. LCSD knew or had reason to suspect there was an ongoing cause to assess him in at least these two areas for over three years and five months, including to the present.

**67.**

In the IEP determination meeting held June 2011, Tyler's parents pressed LCSD's IEP group members for assessments of Tyler's OCD and ADHD when it was

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

clear these two disabilities were excluded.  Then-Oceanlake Principal Betsy Wilcox stated to Tyler's parents "Those are mental health issues.  We don't do mental health."

**68.**

The District repeatedly subjected Tyler to disciplinary measures despite the behavior being a manifestation of his disabilities.  Tyler was suspended at least 12 times between December 2013 and March 2014 for behavior related to his disability, including feigning illness, running from school property, and physical aggression.

**69.**

Tyler's parents provided LCSD with a medical notice from Tyler's psychiatrist regarding Tyler's feigning illness, indicating this was a manifestation of Tyler's disability.   LCSD had knowledge that Tyler was a student with a disability before the behavior occurred and thus was obligated to conduct a manifestation determination prior to continuing these out-of-school removals.

**70.**

The District failed to provide Tyler with appropriate specially designed instruction necessary for him to benefit from his education and to prevent disruptive behaviors.  During his time at Oceanlake Elementary, Tyler was removed from his general education classroom daily. These removals were both scheduled and unscheduled.

**71.**

Tyler would either be moved to a self-contained learning center with no educational lessons to make up for missed classroom time nor specially designed

RICK KLINGBEIL, PC
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

instruction being provided, or he would be removed to a barren "focus room" also known as a seclusion room for part of each school day to address his behaviors.

**72.**

These removals denied him access to the general education or any curriculum and could have likely been avoided if the District were providing specially designed instruction to Tyler in how to manage his anxiety and behavioral responses to the educational environment.

**73.**

Tyler spent a great deal of his educational time isolated in the "focus room," with no school materials or staff present. The quantity and duration of his "focus room" time is known to have occurred dozens of times, for up to an hour on some occasions.

**74.**

After the SST meeting in January 2014, Tyler's teacher began a daily log of his behaviors and activities. It showed a pattern of removal from the classroom that was caused by chronic and escalating severe behaviors that were consistent with his disabilities. This log also detailed his restraints and seclusions. On average, Tyler missed more than 25% of his daily education, and at times 50% or more of the day.

**75.**

Tyler was also allowed to sleep during class time frequently, despite receiving a minimum of 11 hours of sleep a day at home. Tyler was known to use sleep as an avoidance tactic, and parents repeatedly complained to Oceanlake staff about this

RICK KLINGBEIL, PC
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

behavior, and explained that this was a manifestation of his disabilities.  In that correspondence parents also expressed concern with LCSD rewarding this negative avoidance behavior.

### 76.

During the months of March and April 2014, Tyler spent about two hours out of his class and in the special education classroom every day, despite not having an IEP. He received no IEP services in this special education classroom, and rarely had his general education administered there.

### 77.

Part of Tyler's new 504 accommodations involved removing him from his classroom for an hour or more at a time, with no provisions to make up that lost education.

### 78.

On April 14, 2014, Kelly Stroh, a special education teacher wrote to Mr. Samuel about Tyler:

> *"He spent most of the day in Ms. Soper's room and did very little work. The sub didn't know him well enough to hold him accountable. Mr. Dale tried but Tyler argued with him the entire time then went and asked someone else.  Tyler was safe all day today and we were really proud of him for those choices. He did not take a lot of breaks but such as stated above he was in Ms. Soper's most of the day."*

### 79.

The District's refusal to provide specially designed instruction prevented Tyler from receiving a free and appropriate public education and resulted in a loss of skills. He not only did not make adequate progress, he lost skills that he was demonstrating

Page 23 - COMPLAINT (Civil Rights)
Page 23 - COMPLAINT (Civil Rights)

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

during his time at Olalla Center.

## 80.

At least seven times the school restrained or secluded Tyler for which a debriefing was held. Tyler's parents were never invited to these debriefings, thus Tyler's parents were not allowed to participate. Twice Tyler's parents were given notice well after the required time, once the debriefing occurred three days after the incident.

## 81.

At least three times Tyler was not provided access to a bathroom or water while being secluded for over half an hour.  At least once the seclusion lasted over two and one-half hours as documented in LCSD's restraint and seclusion report.  Tyler was not given bathroom breaks or water as required by Oregon law ORS 581-021-0553 on these occasions.

## 82.

On information and belief, on several occasions LCSD administration did not provide required and on-going written approval by a District administrator for seclusions lasting more than 30 minutes as required by Oregon law ORS 581- 021- 0553.

## 83.

LCSD failed to provide complete copies of school records in accordance with 34 CFR §300.613 when requested by Tyler's attorney in February 2014.  Tyler's parents' access rights include the right to have information in the record interpreted or explained, the right to get copies of the record, and the right to have a representative

RICK KLINGBEIL, PC
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

of the parent review the records.

**84.**

The records provided by LCSD omitted at least the following material information:

- Meeting minutes of May 2012 SST meeting;

- Meeting minutes of October 2013 SST meeting;

- Medical referral for 2011 IEP assessment from PCP;

- Medical referral for 2011 IEP assessment from Psychiatrist.

**85.**

Both Medical referrals are noted in the autism evaluation from April 2011. No documentation was provided of the October 2013 SST meetings. May 2012 meeting notes exist only because Tyler's parents have a copy of them. These missing May 2012 notes indicate the parents' and LCSD's mutual plan to follow up with LCSD for Tyler getting assessed for an IEP in the fall of 2012.

**86.**

On April 15, 2014 Tyler's father informed Oceanlake school that April 16 would be Tyler's last day there for the foreseeable future.  On April 17, 2014 Tyler was admitted to the Parry Center in Portland, Oregon.  He was there for three weeks.

**87.**

On May 9, 2014 Tyler's parents took him home from the Parry Center, and enrolled him in the Olalla Center on May 13, 2014. On May 15, Tyler attacked his mother physically, and both Tyler and his mother had to be hospitalized.

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

**88.**

Tyler was placed in the ICU, pending emergency placement in a residential setting, where he remained for 13 days.  During that time period, LCSD made no efforts or attempts to serve Tyler's educational needs.

**89.**

On May 26, 2014 Tyler was re-admitted to the Parry Center and because a student of the Portland Public School District ("PPSD").

**90.**

During the first eleven days in the PPSD, Tyler was repeatedly pulled out of class because of behavioral issues.  The PPSD data showed that Tyler spent an average of nine minutes in the classroom before being pulled out.  During the eleven-day period Tyler's maximum participation time before being pulled from class was 20 minutes.

**91.**

Shortly after enrollment Tyler's parents requested an IEP assessment meeting from the PPSD. They indicated that Tyler was to be a student of the PPSD "for the foreseeable future."  Even so, apparently at the behest of LCSD, the PPSD suggested that LCSD be allowed do the assessment. Tyler's parents refused and insisted that it be done by the PPSD.

**92.**

The IEP meeting was held June 6, 2014.  It was attended by the PPSD school

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

psychologist Nikki Figg, principal Mark Van Hoomissen, and special education teacher

Yulia Setidadi.  Also in attendance by telephone were LCSD psychologist Summer

Holmes, and defendant Van Liew.  Tyler's parents and attorney Chris Shank also

attended.

**93.**

During the discussions, LCSD worked to try and prevent Tyler from receiving an

IEP. Van Liew specifically took contrary and unsupported positions geared at

preventing Tyler from receiving an IEP.  This included arguing that Tyler was able to

establish or maintain satisfactory interpersonal relationships with peers and teachers.

When the asked to name any friend of Tyler's, LCSD and Van Liew were unable to do

so.

**94.**

The LCSD and Van Liew then argued about the meaning of the terms "establish"

and "maintain" in a further effort to prevent Tyler from receiving an IEP.

**95.**

After a time, PPSD psychologist Figg noted that there was ample evidence in

the record and Tyler's history to indicate an inability to "maintain," and strong

indication that he does not easily "establish" the types of relationships at issue, and

moved the discussion forward.

**96.**

When the IEP meeting form was completed, PPSD agreed that Tyler qualified for

an IEP.  Van Liew indicated that the LCSD was not there to vote but to "interpret the

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

data."

**97.**

Tyler re-entered LCSD schools on September 3, 2014.

**98.**

Defendants' wrongful and unlawful conduct detailed above was the product of intentional discrimination based on Tyler Samuel's disabilities, and willful deprivation by defendants of Tyler's rights, privileges, or immunities secured by the Constitution and laws.

**FIRST CLAIM FOR RELIEF**

**Violations of the Individuals with Disabilities Education Act,**

**20 U.S.C. §1400 *et seq*.)**

**(All Defendants)**

**99.**

Plaintiff realleges paragraphs 1 through 98, and further alleges:

**100.**

Under 20 U.S.C. §1400 *et seq*., plaintiff has an explicit right to bring a civil action for the violation of rights protected under the Individuals with Disabilities Education Acty, 20.U.S.C. §1400 *et seq.* ("IDEA").

**101.**

Under 42 U.S.C. §1983, plaintiff has a separate right of action for civil remedies for acts taken under color of law that deprive a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. Together and

Page 28 - COMPLAINT (Civil Rights)
Page 28 - COMPLAINT (Civil Rights)

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

separately, these statutes provide the authority under which plaintiffs now petition this Court for declaratory and injunctive relief, compensation, and money damages for the intentional violations of the IDEA alleged herein.

**102.**

By the acts and omissions alleged herein, taken under color of law, defendants jointly and severally have denied plaintiff of his right to a free and appropriate public education in the least restrictive environment guaranteed under the IDEA, and regulations promulgated thereunder, 34 C.F.R. 300, *et seq.*

**103.**

As a direct and proximate result of defendants' violations of the IDEA, plaintiff has suffered substantial educational and developmental losses and damages, and incurred substantial financial losses and detriment. Unless defendants are enjoined from future misconduct, plaintiff will continue to be damaged and suffer irreparable harm.

**SECOND CLAIM FOR RELIEF**

**(Violations of Section 504 of the Rehabilitation Act of 1973,**

**(29 U.S.C. §794 *et seq.*)**

**(All Defendants)**

**104.**

Plaintiff realleges paragraphs 1 through 98, and further alleges:

**105.**

Under Section 504 of the Rehabilitation Act of 1973, 20 U.S.C. §794 ("Section

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

504"), plaintiff has a right to bring a civil action in the district court of the United States to seek redress for the violations of rights protected under Section 504.

**106.**

Under 42 U.S.C. §1983, plaintiff has a separate right of action for civil remedies for acts taken under color of law that deprive a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. Together and separately, these statutes provide the authority under which plaintiffs now petition this Court for declaratory and injunctive relief, compensation, and money damages for the intentional violations of Section 504 alleged herein.

**107.**

By the acts and omissions alleged herein, taken under color of law, defendants have denied plaintiff of his right to a free appropriate public education in the least restrictive environment guaranteed under Section 504 and regulations promulgated thereunder, 34 C.F.R. 104 *et seq*.

**108.**

By the acts and omissions alleged herein, taken under color of law, defendants have intentionally and unlawfully denied plaintiff of his right to be free from discrimination against handicapped persons by recipients of federal funds in the administration of their programs, as guaranteed under Section 504 and regulations promulgated thereunder, 34 C.F.R. 104 *et seq.*

**109.**

As a direct and proximate result of defendants' violations of Section 504,

Page 30 - COMPLAINT (Civil Rights)

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

plaintiff has suffered substantial educational and developmental losses and damages, humiliation, mental and physical distress, and incurred substantial financial losses and detriment. Unless defendants are enjoined from future misconduct, plaintiff will continue to be damaged and suffer irreparable harm.

### THIRD CLAIM FOR RELIEF

### (Violations of the Americans with Disabilities Act,

### (42 U.S.C. §12131 *et seq.*)

### (All Defendants)

### 110.

Plaintiff realleges paragraphs 1 through 98, and further alleges:

### 111.

Under 42 U.S.C. §12133, plaintiff has a right to bring a civil action in the district court of the United States to seek redress for the violations of rights protected under the Violations of the Americans with Disabilities Act, 42 U.S.C. §12131 *et seq.* ("ADA").

### 112.

Under 42 U.S.C. §1983, plaintiff has a separate right of action for civil remedies for acts taken under color of law that deprive a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. Together and separately, these statutes provide the authority under which plaintiffs now petition this Court for declaratory and injunctive relief, compensation, and money damages for the intentional violations of the Americans with Disabilities Act alleged herein.

### 113.

Page 31 - COMPLAINT (Civil Rights)

RICK KLINGBEIL, PC
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

By the acts and omissions alleged herein, taken under color of law, defendants have violated plaintiff's rights protected under the ADA, and the regulations promulgated thereunder, 28 C.F.R. §35, *et seq.*

**114.**

As a direct and proximate result of defendants' violations of the ADA, plaintiff has suffered substantial educational and developmental losses and damages, humiliation, mental and physical distress, and incurred substantial financial losses and detriment. Unless defendants are enjoined from future misconduct, plaintiff will continue to be damaged and suffer irreparable harm.

**FOURTH CLAIM FOR RELIEF**

**(Violations of the Due Process and Equal Protection Clauses of the Fourteenth Amended to the Constitution of the United States - 42 U.S.C. §1983)**

**(All Defendants)**

**115.**

Plaintiff realleges paragraphs 1 through 98, and further alleges:

**116.**

Under 42 U.S.C. §1983, plaintiff has a right to bring a civil action for remedies in the district court of the United States to seek redress for acts taken under color of law that deprived him of rights, privileges, or immunities secured by the Constitution of the United States.  42 U.S.C. §1983 provides the authority under which plaintiff now petitions this court for declaratory and injunctive relief, and damages for violations of the Fourteenth Amendment of the United States Constitution, as alleged herein.

Page 32 - COMPLAINT (Civil Rights)

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

**117.**

Defendants, through the actions and omissions alleged herein, have denied

plaintiff of liberty and property interests in education, and adopted and implemented a

policy and practice of discrimination based on plaintiff's disabilities. This has included,

but is not limited to defendant's policy of intentionally establishing and implementing a

policy that the District "doesn't do behavioral IEPs" and "we don't do mental health."

Through their acts and omissions, defendants have violated the due process and equal

protection clauses of the Fourteenth Amendment of the Constitution of the United

States.

**118.**

As a direct and proximate result of defendants' violations of Section 504 and the

ADA, plaintiff has suffered substantial educational and developmental losses and

damages, humiliation, mental and physical distress, and incurred substantial financial

losses and detriment. Unless defendants are enjoined from future misconduct, plaintiff

will continue to be damaged and suffer irreparable harm.

**FIFTH CLAIM FOR RELIEF**

**(Violations of 34 CFR §300.613 and Oregon Public Records Act**

**ORS 192.410)**

**(All Defendants)**

**119.**

Plaintiff realleges paragraphs 1 through 98, and further alleges:

**120.**

Page 33 - COMPLAINT (Civil Rights)
Page 33 - COMPLAINT (Civil Rights)

RICK KLINGBEIL, PC
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

Under 42 U.S.C. §1983, plaintiff has a right to bring a civil action for remedies in the district court of the United States to seek redress for acts taken under color of law that deprived him of rights, privileges, or immunities secured by the laws and Constitution of the United States.  42 U.S.C. §1983 provides the authority under which plaintiff now petitions this court for declaratory and injunctive relief, and damages for violations of 34 CFR §300.613 and the Oregon Public Records Act, as alleged herein.

**121.**

Defendants, through the actions and omissions detailed above, based in part on plaintiff's disability and in part on retaliation against plaintiff for seeking to enforce his right under the IDEA and other laws, willfully and intentionally failed to comply with 34 CFR §300.613 and the Oregon Public Records Act.

**122.**

Defendants' failure caused plaintiff to be denied access to public information relevant to this action and his education to which he was and is entitled.

**123.**

Unless defendants are enjoined, plaintiff will be diminished in his ability to prosecute his claims in this action, and his parents or guardians will be harmed in their ability to participate fully in the development and implementation of policies and practices impacting his public education.

**WHEREFORE**, plaintiff asks for judgment against defendants as follows:

1.     Declare that defendants' practices, actions, and/or omissions have violated plaintiff's rights protected under the IDEA, 20 U.S.C. §1400 *et*

Page 34 - COMPLAINT (Civil Rights)

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

*seq*; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794; The Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq*; the Fourteenth Amendment to the Constitution of the United States; 34 CFR §300.613; Oregon Public Records Act; and ORS §192.410;

2.     Enjoin defendants from further violating plaintiff's rights protected under the IDEA, Section 504; the ADA; the Fourteenth Amendment; 34 CFR §300.613 and Oregon Public Records Act, ORS §192.410;

3.     Order defendants to fully and completely fulfill their duties to provide plaintiff with a free appropriate public education in the least restrictive environment under IDEA, Section 504; the ADA; and the Fourteenth Amendment;

4.     Retain jurisdiction over defendants until such time as the Court is satisfied that their unlawful policies, practices, acts and omissions complained of herein no longer exist and will not recur, and that defendants are fully and completely fulfilling their duties to provide plaintiff with a free appropriate public education in the least restrictive environment or to ensure that such children receive the same;

5.     Order defendants to compensate plaintiff for the injuries, damages, and harm caused by its failure to provide him with a free appropriate education in the least restrictive environment;

6.     Order defendants to compensate plaintiff for the injuries, damages, and harm caused

Page 35 - COMPLAINT (Civil Rights)

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com

by its discrimination based on his disability;

7.    Award plaintiff's his reasonable attorney fees incurred in bringing this action;

8.    Award plaintiff's costs and disbursements incurred in bringing this action;

9.    Grant all other relief as this Court may find just and proper.

**DATED**:    October 11, 2014.

**RICK KLINGBEIL, P.C.**

/s/ Rick Klingbeil

_____

Rick Klingbeil, OSB #933326
 of Attorneys for Plaintiff

Page 36 - COMPLAINT (Civil Rights)

**RICK KLINGBEIL, PC**
2222 NE Oregon St., #101
Portland, OR 97201
Ph: 503-473-8565
Fax: 503-427-9001
email: rick@klingbeil-law.com